**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**DELTA DIVISION**


**DEXTRIC WILLIAMS, INDIVIDUALLY AND**
**ON BEHALF OF THE HEIRS-AT-LAW/**
**WRONGFUL DEATH BENEFICIARIES OF**
**JERMAINE WILLIAMS, DECEASED**                                    **PLAINTIFF**


**v.**                                             **CIV. ACTION NO.: 2:10cv215-SA-JMV**


**CITY OF CLEVELAND, MISSISSIPPI; ET AL.**                     **DEFENDANTS**


**MEMORANDUM OPINION AND ORDER**

      This cause comes before the Court on the motion [85] of the Plaintiff to transfer

trial of this case to Greenville. Plaintiff filed suit in the Delta Division of the Northern

District of Mississippi. The matter was assigned to this Court and set for trial in Aberdeen,

seat of the Eastern Division, as the customary practice in this district is for judges to try

cases at their respective "duty stations."  The Plaintiff seeks to move this trial to Greenville

pursuant to 28 U.S.C. § 1404.  Plaintiff also challenges the Court's jury selections

practices on constitutional and statutory grounds. The Defendants oppose Plaintiff's

motion and request that the trial be held in Aberdeen.

      Before turning the merits of Plaintiff's arguments, the Court notes that there is no

shortage of litigation in the Northern District of Mississippi concerning intra-district

transfer motions filed by both plaintiffs and defendants alike. See, e.g., Beck v. Koppers,

Inc., 2006 WL 2228918, at *1 (N.D. Miss. July 25, 2006); Johnson v. Lewis, 645 F. Supp.

2d 578 (N.D. Miss. 2009); Johnson v. Merchant, 628 F. Supp. 2d 695 (N.D. Miss. 2009);

<u>Dulin v. Board of Com'rs of Greenwood Leflore Hosp.</u>, 2009 WL 3349169 (N.D. Miss. Oct. 15, 2009); <u>Estate of Boles v. Nat'l Heritage Realty, Inc.</u>, 2010 WL 2038570 (N.D. Miss. May 20, 2010); <u>In re Gibson</u>, 423 F. App'x 385 (5th Cir. 2011). Likewise, until fully resolved, either through case law or congressional action, litigation over these matters does not appear to be coming to an end – or even slowing pace – with the passage of time. Given this, many of the issues raised by Plaintiff have already been thoroughly addressed by judges in the Northern District and, in the interest of not "reinventing the wheel," this Court first turns to and adopts Chief Judge Mills' reasoning, as it relates to this action, in <u>Johnson v. Lewis</u>, 645 F. Supp. 2d 578 (N.D. Miss. 2009) and <u>Johnson v. Merchant</u>, 628 F. Supp. 2d 695 (N.D. Miss. 2009).

<u>A.</u>  <u>Practices in the Northern District of Mississippi</u>

In the two <u>Johnson</u> cases, Chief Judge Mills provided a detailed account not only of the legislative history concerning divisional venue but also of this Court's own history, as well as the policy considerations driving the Northern District's practices governing the allocation of civil cases. The most suitable beginning point for detailing the practices of this Court is explaining the Northern District's standing orders and the policy reasons fueling the adoption of such orders.

For the last decade, the judges of the Northern District have operated under a series of substantially similar standing orders relating to divisional venue and case assignments which are based upon policy considerations specific to the litigation needs of this District. Legislative history indicates that, since 1988, it has been Congress' intent to permit federal

district courts to establish, if they so choose, their own standards relating to divisional

venue. Prior to its repeal, the divisional venue statute, 28 U.S.C. § 1393 provided that:

> (a) Except as otherwise provided, any civil action, not of a local nature, against a single defendant in a district containing more than one division must be brought in the division where he resides. (b) Any such action, against defendants residing in different divisions of the same district or different districts in the same State, may be brought in any of such divisions.

Section 1393 was repealed in 1988. Comments found in the U.S. Code Annotated give

some guidance as to Congress' intent in doing so:

> Citing the elimination of divisional venue in criminal cases years earlier, that nothing at all seems to have been lost by its erasure, and that the break-up of a district into divisions is not related either to size or population anyway, Congress repealed as well the divisional venue for which § 1393 had provided on the civil side.

> While statutory direction may now be out of the picture, districts that are divided into divisions may still be affected by distinctions between divisions emanating from the court's own rules. See Moysi v. Trustcorp, Inc., 725 F. Supp. 336 (N.D. Ohio, E.D. 1989). It was said in Jordon v. Bowman Apple Products Co., 728 F. Supp. 409 (W.D. Va. 1990), "that the purpose in repealing § 1393 was not to prohibit divisional venue, but rather not to require it. Where divisional venue is mandated by local rule ... those mandates must be complied with", but if there is no local rule, venue need be set only on a district basis, disregarding divisions.

32A AM. JUR. 2D FEDERAL COURTS § 1190 "Venue in multidivision districts" similarly

explains that:

> The current version of the general venue statute does not speak in terms of divisions within a district, but rather requires that venue be laid in the proper district. The repeal of 28 U.S.C.A. § 1393 casts some doubt on whether any vitality remains in the concept of divisional venue. However, the purposes of the repeal of divisional venue were to provide the courts with greater flexibility to accommodate the convenience of the parties and promote the efficient delivery of judicial services. The repeal was not intended to act as a prohibition against districts distributing their business by a divisional venue process. . . . If a district lacks local rules concerning

divisional venue, a case may be heard in any division within the district with or without the consent of the parties, and a court may transfer a case to another division under 28 U.S.C.A. § 1404(a), which provides for transfers to other divisions.

The repeal of § 1393 provided an opportunity for the Northern District to establish its own standards regarding divisional venue. It also provided a reason for doing so. Section 1393 had limited plaintiffs in multi-divisional districts to filing suit in the division where the defendant resided. With the repeal of this statute, the freedom of plaintiffs to file suit in various divisions within a district increased, as did the potential for mischief in this context.

The potential for shopping for a particular judge *or jury* has been a matter of longstanding concern among the bench in the Northern District. The judges of this district wish to avoid the perception that one form of justice will be available to litigants filing suit in one division in this district as opposed to those filing suit in another. The judges also wish to avoid a situation whereby any particular division comes to be seen as a "fiefdom" of sorts, in which the idiosyncrasies and preferences of one judge come to dominate the local litigation practice.

Finally, there is the matter of the named standing divisions in the Northern District as opposed to divisional allocation in reality. In 1996, the Clarksdale Courthouse, site of the Delta Division, was closed. Though this courthouse was closed, Mississippi's divisional statute was not amended, see 28 U.S.C. § 104, thereby leaving the Northern District with a division without a courthouse. Changes in court facilities have effected other divisional aspects of litigation in this district. For instance, this District has adopted a jury selection plan pursuant to the Jury Selection and Service Act of 1968. 28 U.S.C. §

1863. That plan divides the district into three divisions: Eastern; Western;[1] and Greenville.[2] This three-division divide more accurately reflects the federal court facilities and judges located in the Northern District and is supported by statutory authority.

Motivated by these and other concerns, then- Chief Judge Biggers first issued, on July 21, 1999, a standing order publicly filed under case number 3:98MC19, which allocated cases filed in the various divisions among the Northern District judges. On July 2, 2003, then-Chief Judge Davidson issued a substantially similar order, under the same case number, reflecting changes in the makeup of the Northern District judges. The current standing order, issued by Chief Judge Mills, allocates half of the cases filed in a particular division to the "resident" active district judge, and then remaining cases are divided among the other judges in the Northern District. In so doing, the order promotes public policy considerations disfavoring forum shopping and also encourages the development of a jurisprudence applicable to the district as a whole.

As Chief Judge Mills has articulated, the judges in this district must juggle individual dockets containing hundreds of potential trials. It would be impossible for these judges to efficiently manage their dockets if required to maintain a near-constant state of preparation to travel to various trials on their calendar. This is particularly true considering the local practice of "stacking" several trials, likely filed in different divisions, all set to begin on the same date in a particular courtroom. It often does not become apparent until

---

[1] This jury pool division encompasses all the statutorily designated counties of the Western Division plus Desoto, Panola, Quitman, Tallahatchie, Tate and Tunica Counties from the Delta Division.

[2] This jury pool division encompasses all the statutorily designated counties of the Greenville Division plus Bolivar and Coahoma Counties from the Delta Division. The Court further discusses jury selection as it relates to Bolivar County in more detail below.

days or even hours before trial which cases will settle and which will proceed. Moreover, there are limitations in the facilities at certain courthouses in this district, and it is likely that these limitations would result in even more delays. For example, neither Greenville nor Aberdeen have a courtroom available for visiting judges, and Clarksdale does not even have a courthouse.

Additionally, changes in technology and procedures have lessened the need for judges to travel. The Northern District has adopted electronic filing. The work of attorneys who practice before this court can be done at any location with internet access. The vast majority of all pleadings, motions and orders never require physical attendance at court, greatly reducing the burden on lawyers needing to travel to the courthouse in order to find relief for their clients.

Further, this court randomly assigns Magistrate Judges to each action. Random assignment means that no matter where a case is filed, it could be assigned to a Magistrate Judge whose chambers are in Aberdeen, Greenville, or Oxford. Magistrate Judges in this district conduct case management, settlement, and pre-trial conferences. Thus even if the court moved, for the purposes of trial, all cases to the division in which they were filed, the parties might still have to travel in order to complete the required conferences. Relative to the number of cases in which a case management conference is held, the number of cases that actually proceed to trial is quite small. Thus, the benefit of trying all cases in the division in which they are filed is greatly lessened. Accordingly, it has been – and continues to be – the routine practice of the judges in this district to try cases at their duty

stations, which in this case is Aberdeen.[3]  However, it is important to note that the judges

in this district "do not suggest that its adoption of divisional venue practices means that no

circumstances requiring divisional transfer might arise in this district." <u>Lewis</u>, 645 F. Supp.

2d at 583.

B.  <u>Transfer Under 28 U.S.C. § 1404</u>

After providing background information in order to clarify practices by this Court

that were not fully or accurately depicted in the parties' briefs, the Court now turns its

focus to the merits of Plaintiff's initial contention. Plaintiff first asserts that the Court

should transfer the trial in this matter under 28 U.S.C. § 1404.  In Plaintiff's brief, Plaintiff

asserts, "Due to the Clarksdale courthouse closure, the Greenville Division was expanded

to include both Bolivar and Coahoma Counties from the Delta Division."  In reliance for

this proposition, Plaintiff cites to Chief Judge Mills opinion in <u>Johnson v. Merchant</u>, 628 F.

Supp. 2d 695, 697 (N.D. Miss. 2009).   Plaintiff appears to not fully understand the

<u>Merchant</u> opinion. Bolivar and Coahoma Counties are not actually "part of" the Greenville

Division. Instead, what Chief Judge Mills was referring to in <u>Merchant</u> is how the

Northern District allocates its jury pool throughout the three divisions. Bolivar and

Coahoma Counties fall within the Greenville Division with respect to jury selection

procedures only.  Thus, Plaintiff's statement that the venue in this matter is actually proper

---

[3] Chief Judge Mills acknowledged that this approach regrettably results in some litigants and some witnesses having to travel longer distances than they would have to travel if a particular district judge only heard cases in his or her own division. However, as Chief Judge Mills explained, it is the view of the judges in the Northern District that the quality and uniformity of justice is more important than the driving distance some litigants might face in reaching those courtrooms. <u>Lewis</u>, 645 F. Supp. 2d at 582.

in the Greenville Division, <u>see</u> Plaintiff's Memorandum Brief in Support of Motion at 5, is

inaccurate. The breakdown in divisional venue is as follows

### DIVISION SITES AND COUNTIES
### (VENUE)
### NORTHERN DISTRICT OF MISSISSIPPI[4]

| Western Division (Oxford) | Eastern Division (Aberdeen) |
|---|---|
| 1. Benton<br>2. Calhoun<br>3. Grenada<br>4. Lafayette<br>5. Marshall<br>6. Montgomery<br>7. Pontotoc<br>8. Tippah<br>9. Union<br>10. Webster<br>11. Yalobusha | 1. Alcorn<br>2. Attala<br>3. Chickasaw<br>4. Choctaw<br>5. Clay<br>6. Itawamba<br>7. Lee<br>8. Lowndes<br>9. Monroe<br>10. Oktibbeha<br>11. Prentiss<br>12. Tishomingo<br>13. Winston |
| **Delta Division (Oxford)** | **Greenville Division (Greenville)** |
| **1. Bolivar**<br>**2. Coahoma**<br>3. DeSoto<br>4. Panola<br>5. Quitman<br>6. Tallahatchie<br>7. Tate<br>8. Tunica | 1. Carroll<br>2. Humphreys<br>3. Leflore<br>4. Sunflower<br>5. Washington |

---

[4] This breakdown can be found in the Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi.

While the Northern District is technically split into four divisions, the notion that there is actually four separate divisions in this District is illusory. As noted above, the Delta courthouse was closed; yet, Mississippi's divisional statute was not amended, see 28 U.S.C. § 104, thereby leaving the Northern District with a division without a courthouse.

Despite the fact that the Northern District is split into four divisions, this District has adopted a jury selection plan pursuant to the Jury Selection and Service Act of 1968, see 28 U.S.C. § 1863, that divides the District into three divisions: Eastern, Western, and Greenville. The breakdown for jury divisions in the Northern District is as follows:

| Jury Divisions for the Northern District of Mississippi | | |
| --- | --- | --- |
| **Greenville Division** | **Western Division** | **Eastern Division** |
| **1. Bolivar**<br>**2. Coahoma**<br>3. Carroll<br>4. Humphreys<br>5. Leflore<br>6. Sunflower<br>7. Washington | 1. Benton<br>2. Calhoun<br>3. Desoto<br>4. Grenada<br>5. Lafayette<br>6. Marshall<br>7. Montgomery<br>8. Panola<br>9. Pontotoc<br>10. Quitman<br>11. Tallahatchie<br>12. Tate<br>13. Tippah<br>14. Tunica<br>15. Union<br>16. Webster<br>17. Yalobusha | 1. Alcorn<br>2. Attala<br>3. Chickasaw<br>4. Choctaw<br>5. Clay<br>6. Itawamba<br>7. Lee<br>8. Lowndes<br>9. Monroe<br>10. Oktibbeha<br>11. Prentiss<br>12. Tishomingo<br>13. Winston |

Here, this action arises from events occurring in Cleveland, Mississippi, which falls within Bolivar County. Because Bolivar County is part of the Delta Division for venue purposes, this case is properly filed in the Delta Division. Despite the jury selection

procedures utilized, this action is *not* filed as a Greenville Division case as Plaintiff appears to suggest.[5]   It is upon this backdrop that the Court turns to Plaintiff's motion to transfer venue to Greenville under 28 U.S.C. § 1404.

Section 1404 authorizes a court to transfer a case or a proceeding within a case. It provides, in relevant part:

> (a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division *where it might have been brought.*

> (b) Upon motion, consent or stipulation of all parties, any action, suit or proceeding of a civil nature or any motion or hearing thereof, may be transferred, in the discretion of the court, form the division in which pending to any other division in the same district. Transfer of a proceeding in rem brought by or on behalf of the United States may be transferred under this section without the consent of the United States where all other parties request transfer.

> (c) A district court may order any civil action to be tried at any place within the division in which it is pending.

28 U.S.C. § 1404 (emphasis added).  While Plaintiff only relies on Section 1404(a), the Court nonetheless addresses all three subsections.

*Section 1404(a)*

"Subsection (a) [of § 1404] authorizes the court to transfer venue of the entire action for the convenience of the parties and witnesses, in the interest of justice." In Re Gibson, 423 F. App'x at 389. Under its § 1404(a) analysis, the Fifth Circuit has articulated a myriad of public and private factors for courts to consider. See In re Volkswagen of America, Inc., 545 F.3d 304 (5th Cir. 2008).  Many attorneys in the Northern District, with

---

[5] As can be seen when viewing the Court's local rules, since there is no courthouse in the Delta Division, Delta Division cases are filed in Oxford.

the attorneys in this action being no exception, are under the impression that In re Volkswagen applies to requests for intra-district transfers. However, as Chief Judge Mills articulated in Lewis, "[a]pplication of that standard to intra-district transfer issues raised in light of a judge's decision to try a case at his duty station would be tantamount to abrogating this [C]ourt's practice of trying cases at a Judge's duty station." 545 F. Supp. 2d at 583. This Court agrees with the rationale employed in Lewis and, for the reasons discussed below, the Court concludes that neither § 1404(a) nor In re Volkswagen control this action.

Plaintiff's filing of this action in the Delta Division was proper, and Plaintiff does not seek transfer of this entire action to another division. Instead, Plaintiff asserts that trial alone should be transferred to Greenville. Title 28, section 1404(a) authorizes a district court, in the exercise of its discretion, to transfer a case to another district or division "[f]or the convenience of parties and witnesses, in the interest of justice."[6] As noted above, in In re Volkswagen, the Fifth Circuit approved the use of a number of private and public interest factors as an aid in determining whether transfer under § 1404(a) is appropriate in the context of an *inter*-district transfer. The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the

---

[6] Though § 1404(a)'s language may suggest otherwise, "it is well established that the interest of justice is a factor to be considered on its own and an important one and that the interest of justice may be decisive in ruling on a transfer motion . . . ." WRIGHT & MILLER, 15 FEDERAL PRACTICE AND PROCEDURE (2d edition) § 3854 (citing Coffey v. Van Dorn Iron Works, 796 F.2d 217, 222 (7th Cir. 1986) ("The 'interest of justice' analysis relates, then, to the efficient functioning of the courts, not to the underlying dispute.")). The movant must shoulder the burden of demonstrating that the transferee venue is "clearly more convenient than the venue chosen by the plaintiff." In re Volkswagen of America, Inc., 545 F.3d 304 (5th Cir. 2008).

attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."

While In re Volkswagen, and the factors articulated therein, would clearly be applicable in a case involving a transfer from the Northern District of Mississippi to the Southern District of Mississippi, and it might be applicable to a purely intra-district transfer in a district which had not adopted its own divisional venue practices,[7] it is not applicable in this instance to an intra-district transfer within the Northern District. As Chief Judge Mills explained in Lewis, "the first three private interest factors set forth in that case involve considerations which, for the reasons discussed above, this court has elected to de-emphasize in the interests of pursuing broader judicial policy goals. The repeal of § 1393 clearly suggests that this court has the authority to pursue these goals." Lewis, 645 F. Supp. 2d at 583. Similarly, the fourth factor put forth by In re Volkswagen is sufficiently broad to encompass the public policies motivating the judges of this district to adopt the current venue rules. However, if the In re Volkswagen test is read as nothing more than an "algebraic balancing of four equally weighted factors applicable to purely

---

[7] In a case where the district had not adopted its own divisional venue practices, there would be no unique local rules to consider and, as suggested in the AmJur2d article quoted above, the general § 1404(a) factors would apply as default rules. See Lewis, 645 F. Supp. 2d at 584.

intra-district transfers then it would be impossible for this district to maintain its current practices." Id. at 583-84.

Along the same lines, upon viewing the public interest factors, it becomes apparent that they have little to do with intra-district transfers. The first factor encompasses one of the traditional policy concerns of the judges in this district. The other three factors are irrelevant. The same judge presides, regardless of the division in which the case is tried. Therefore, familiarity with forum law is not affected by intra-district transfer. The same reasoning holds for the application of foreign law. These last two factors, in fact, only come into play when forums in other states are considered.

In contrast to In re Volkwagen, the Fifth Circuit has held in criminal cases, which similarly lack divisional venue rules, that an intra-district transfer may be required upon "a strong showing of prejudice." United States v. Duncan, 919 F.2d 981, 985 (5th Cir. 1990). Clearly a "strong showing of prejudice" makes an intra-district transfer necessary and appropriate. This Court agrees with Chief Judge Mills and "discern[s] no unfairness to civil litigants by applying the Duncan standard to the civil docket, since a criminal defendant facing trial for his personal freedom faces much higher stakes than any civil litigant. The Duncan standard which has proven adequate for criminal defendants should likewise protect the interests of civil litigants." Lewis, 645 F. Supp. 2d at 583. In other words, since In re Volkswagen is factually distinguishable and involved a transfer outside of the particular district, "[i]t appears that the Duncan standard should apply to purely divisional transfer issues in this district." Id. at 584. As Chief Judge Mills reasoned,

> The issue in the Northern District, however, is not whether a particular
> judge made a correct transfer ruling based upon generalized § 1404(a)

> factors, but whether the district as a whole has the right to establish its own divisional venue standards. The <u>Duncan</u> "strong showing of prejudice" standard already applicable in this circuit will continue to serve as a minimal "floor" upon litigants' rights to obtain transfer, notwithstanding any local rule to the contrary. In other cases, however, judicial districts should have the freedom to pursue their own judicial policy objectives tailored to the needs of their districts. The repeal of § 1393 left divisional venue issues to the discretion of district courts. This discretion will be illusory if the judges in this district are required to apply a "one size fits all" approach to venue arising from a decision which arose in a context differing greatly from the present one. The Northern District of Mississippi encompasses a small geographical area with a limited number of judges and facilities in relation to most districts within the Fifth Circuit. Applying the same standards within this district as are imposed on districts with larger populations and geographical areas is inconsistent with the policies which motivated the repeal § 1393.

<u>Id.</u> As such, Plaintiff's reliance on <u>In re Volkswagen</u> is misplaced in this instance. Yet, this is not an indication that a "strong showing of prejudice" under <u>Duncan</u> is the only instance in which a court may decide transfer to another division is appropriate. As noted in <u>Lewis</u>, "[o]n a case-by-case basis each court should determine if facts specific to a particular matter counsel for a transfer. In so deciding the judges in the district would likely consider the factors specified in <u>In re Volkswagen</u> as well as other factors such as the timeliness of the request for relief." <u>Id.</u> at 585 n.7. However, in this case, even assuming that <u>In re Volkswagen</u> applies to intra-district transfers, the Court would nonetheless deny Plaintiff's motion for the reasons discussed herein.

Venue in this instance was technically proper in the Delta Division – as that division encompasses Bolivar County. Because the Delta Division is merely illusory, existing only "on the books," this case is factually distinguishable from <u>Johnson</u> and

Koppers.[8]   In those cases, suit was filed in one division, whereby the court, following customary practice, subsequently set trial for a separate division, and then one of the parties moved to have the trial set in the division *in which the case was originally and properly filed*. Here, by contrast, Plaintiff is attempting to move the trial not back to where it was originally filed, but instead to an entirely separate division (i.e., Greenville).  This is an issue that neither party actually addresses in the briefs submitted to the Court.  That is, neither party raises the issue of whether § 1404(a) is even applicable, as by its very language subsection (a) directs that a case may only be transferred "to any other district or division *where it might have been brought*." 28 U.S.C. § 1404(a) (emphasis added). Because Bolivar County, for divisional purposes, falls within the Delta Division, this case could not have been "brought" in Greenville.

Plaintiff appears to concede, perhaps unintentionally, that this case could not have actually been brought in Greenville. See Memorandum at 8 ("In this matter, Plaintiff is seeking transfer, *not of where it might have been brought . . . .*"). This statement alone negates the applicability of § 1404(a). Nevertheless, even if the case could have been originally "brought" in Greenville, Plaintiff has not demonstrated that the case should be transferred to that division under § 1404(a), In re Volkswagen, or Duncan. Plaintiff only actually points to the alleged inconvenience of witnesses and Federal Rule of Civil Procedure 45(c)(3)(A)(ii), which provides that,

> On timely motion, the issuing court *must* quash or modify a subpoena that:
> (ii) requires a person who is neither a party nor a party's officer to travel
> more than 100 miles from where that person resides, is employed, or

[8] The Court discusses the Koppers case and why any reliance on it in this instance is inappropriate in more detail below. See footnote 10.

> regularly transacts business in person-*except that, subject to Rule 45(c)(3)(B)(iii), the person* **may be commanded to attend a trial** *by traveling from any such place* **within the state** *where the trial is held*;

(emphasis added). Aberdeen is certainly over 100 miles from Cleveland, which meets the distance requirement in Rule 45(c)(3)(A)(ii), but, since both cities are located in Mississippi, this Court has the authority to order residents to attend trial in Aberdeen. This authority is subject to Rule 45(c)(3)(B)(iii), which provides that

> To protect a person subject to or affected by a subpoena, the issuing court **may**, on motion, quash or modify the subpoena if it requires: (iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(Emphasis added). This Court currently has no motion to quash before it, and it will therefore not address whether it might choose to quash any trial subpoena that might be issued for any witnesses. Further, the Plaintiff – unlike the party in <u>Johnson v. Lewis</u> – has failed to submit affidavits from any witnesses asserting that they refuse to, or would be inconvenienced by having to, appear for trial in Aberdeen. 645 F. Supp. 2d at 586; <u>see also</u> <u>United States v. Gourley</u>, 168 F.3d 165, 171 (5th Cir. 1999) (inconvenience posed by requiring criminal defendant's witnesses who resided in Houston, Texas, to travel to Laredo, Texas, for trial-a distance of approximately 350 miles-was "minimal at best in this age of convenient travel, communication, discovery, and trial testimony preservation.") (quoting <u>Smith v. Colonial Penn Ins. Co.</u>, 943 F. Supp. 782, 784 (S.D. Tex. 1996)).

What appears to be driving Plaintiff's entire motion is not this Court's practice of trying cases at a particular judge's "duty station," but instead the jury selection procedures adopted by the Northern District. That is, Plaintiff seeks a jury pooled from Bolivar County, and jurors in Bolivar County serve in Greenville. Before addressing this argument

concerning jury selection, however, the Court first addresses the remaining subsections under § 1404, as well as recent Fifth Circuit case law directed at the Northern District's divisional allocation practices.

*Section 1404(b) and (c)*

"Subsections (b) and (c) [of 28 U.S.C. § 1404] authorize the district court to transfer the location of proceedings, including trial, without also transferring venue of the entire action. Subsection (b), by its terms, applies only when all of the parties consent." In re Gibson, 423 F. App'x at 389.  In In re Gibson, the Fifth Circuit was a faced with a writ of mandamus filed against Judge Pepper after defendants made a motion for intra-district transfer. The In re Gibson case is important because, in many respects, the issues raised are similar to ones before the Court in the present action.  In that case, suit was filed in the Delta Division.  Judge Pepper, following customary practice, set trial in Greenville. The defendants filed a motion for intra-district transfer, arguing (among other things) that the Court acted inconsistently with § 1404. The Fifth Circuit denied the writ. As it relates to § 1404 (b) and (c), and how those subsections apply to this case, the Fifth Circuit held as follows:

> The district court did not transfer the trial of these cases from Oxford to Greenville; they were never set for trial in Oxford. Accordingly, the district court did not act in a manner inconsistent with 28 U.S.C. § 1404(b), which authorizes intra-district transfers of proceedings only when all of the parties consent or agree. Although the trial setting in Greenville violates the statutory directive that court for the Delta Division cases is to be held at Clarksdale or Cleveland, there is no operational federal courthouse at either of those locations.

In re Gibson, 423 F. App'x at 390.

The rationale employed by the Fifth Circuit in <u>In re Gibson</u> is equally applicable in this instance. Here, this Court has never *transferred* the trial in this matter. The trial has always been set in Aberdeen. And, while the Court might be technically "violating" the statutory directive vis-à-vis locations for Delta Division trials, there is no operational courthouse in either Clarksdale or Cleveland. Given this, a stringent application of § 1404(c) is impossible. As Chief Judge Mills aptly noted in <u>Lewis</u>,

> this provision [28 U.S.C. § 1404(c)] must be read in light of the repeal of § 1393, and the resulting implicit invitation for district courts to establish their own individualized practices regarding divisional venue. It does not make a great deal of sense to suggest that Congress would, on the one hand, essentially wash its hands of the divisional venue issue by repealing § 1393, while at the same time maintaining stringent divisional trial venue rules in § 1404. Moreover, while the language of § 1404(c) indicates that district courts may order trials to be held anywhere in the division where suit is filed, it does not indicate that such trials may only be held in that division. "May" is the language of discretion.[9] Given that Congress is now indifferent to whether divisional venue rules exist at all, it is inconsistent to suggest that § 1404(c) should be read as expressing an intent by Congress to micro-manage divisional trial venue issues with mandatory rules.

<u>Lewis</u>, 645 F. Supp. 2d at 585. Thus, a stringent reading of § 1404(c) is inappropriate, and the Court denies Plaintiff's motion to transfer under 28 U.S.C. § 1404. As noted by Judge Jolly in <u>In re Gibson</u>, "the plaintiffs filed suit in the Delta Division, and they have no statutory right to have this case tried in [Greenville]."[10] <u>In re Gibson</u>, 423 F. App'x at 390.

---

[9] The Court does not wish to indicate judges may arbitrarily decide where to try cases. Quoting Judge Henry J. Friendly, <u>In re Volkswagen</u>, shows "that '[e]ven when a statute or rule expressly confers discretion or uses the verb 'may' or some similar locution, there is still the implicit command that the judge shall exercise his power reasonably.' " 545 F.3d at 311 (quoting <u>Indiscretion About Discretion</u>, 31 EMORY L.J. 747, 765 (1982)). Thus, as discussed above, there are instances where it may be out of bounds for a judge to try a case at his or her duty station.

[10] To any extent Plaintiff relies on the Fifth Circuit's prior grant of mandamus in <u>In re: Koppers Inc.</u>, No. 09-60127 (5th Cir. April 3, 2009), the Court finds such reliance

<u>C.</u>  <u>Constitutional and Statutory Challenges</u>

Plaintiff contends that this case should be transferred to Greenville in order to "secure Plaintiff's rights under the Sixth and Fourteenth Amendments to a jury drawn from the cross section of the community, and under the Fourteenth Amendment to equal protection of the laws in accordance with <u>Batson</u>." Plaintiff also appears to bring a challenge to the Northern District's jury selection procedures under the Jury Selection and Service Act of 1968, 28 U.S.C. § 1861.  Thus, this Court is faced with two constitutional challenges, one based on cross-section requirements and the other falling under the Equal Protection Clause, and an interrelated statutory-based cross-section challenge.  For the reasons discussed below, the Court finds that Plaintiff has entirely failed to establish that the policies and procedures adopted in the Northern District run afoul of either the Constitution or 28 U.S.C. § 1861.

*Constitutional Cross-Section Requirements*

The Court first addresses Plaintiff's alleged right under the "Sixth and Fourteenth Amendments" to a jury drawn from the cross-section of the community.  At the outset, the

---

misplaced.  The court in <u>In re Gibson</u> also found reliance on that case "misplaced." <u>In re Gibson</u>, 423 F. App'x at 390. The Fifth Circuit noted as follows,

> The order granting mandamus in <u>Koppers</u> states only that 'It is ordered that the petition for writ of mandamus is granted.' It is difficult to see how that order creates any binding precedent that must be followed under the facts of this case. Moreover, <u>Koppers</u> is distinguishable; the plaintiffs in that case filed suit in the Western District (Oxford), and thus had a statutory right to have the case tried in Oxford rather than Greenville.

<u>Id.</u>

Court points out that the right to a jury in civil cases is based on the Seventh Amendment, not the Sixth. See U.S. CONST. amend. VII; U.S. CONST. amend. VI. While the Sixth Amendment does require in *criminal* cases that the jury pool be drawn from a fair cross-section of the community, see Taylor v. Louisiana, 419 U.S. 522, 530, 95 S. Ct. 692, 42 L. Ed. 2d 690 (1975), "the Supreme Court has not recognized a Constitutional mandate that jury pools in civil cases reflect a fair cross-section of the community." Fleming v. Chicago Transit Authority, 397 F. App'x 249, 2010 WL 4140416, at *1 (7th Cir. 2010).[11] In McCall v. Shields Associates, Inc., the court noted that Duren v. Missouri, 439 U.S. 357, 364, 99 S. Ct. 664, 58 L. Ed. 2d 579 (1979) and Taylor v. Louisiana, 419 U.S. 522, 95 S. Ct. 692, 42 L. Ed. 2d 690 (1975) – the two cases relied on by Plaintiff – "are not applicable to this case as they address the Sixth Amendment right (made applicable to the states by virtue of the Fourteenth Amendment) of *criminal* defendants to a jury draw from a fair cross-section of the community . . . By its terms, the Sixth Amendment has no relevance to civil proceedings but instead serves to guarantee[ ] an impartial jury trial in *criminal* proceedings." 617 F. Supp. 244, 246 (D.C.C. 1985) (emphasis and brackets in original, internal quotations and citations omitted).[12] While the Fifth Circuit has not directly

---

[11] See also, e.g., Laura G. Dooley, National Juries for National Cases: Preserving Citizen Participation in Large–Scale Litigation, 83 N.Y.U. L. REV. 411, 439–40 (2008); Kristy Lee Bertelsen, From Specialized Courts to Specialized Juries: Calling for Professional Juries in Complex Civil Litigation, 3 SUFFOLK J. TRIAL & APP. ADVOC. 1, 29 n.188 (1998); William V. Luneberg & Mark A. Nordenberg, Specially Qualified Juries and Expert Nonjury Tribunals: Alternatives for Coping with the Complexities of Modern Civil Litigation, 67 VA. L. REV. 887, 922–23 (1981).

[12] The court in McCall directly addressed the Supreme Court's decision in Thiel v. Southern Pacific Co., 328 U.S. 217, 66 S. Ct. 984, 90 L. Ed. 1181 (1946) – a case in which the defendant in McCall relied on. In Thiel, a plaintiff employed as a daily wage earner who had brought a personal injury claim challenged the jury verdict in favor of the

addressed the issue, the court, in <u>Timmel v. Phillips</u>, "assume[d], without deciding, that the fair cross-section requirement is similarly required by the Constitution in civil cases." 799 F.2d 1083, 1086 n.5 (5th Cir. 1986). While the Plaintiff here failed to assert a constitutional violation under the *Seventh* Amendment, the Court nonetheless addresses the alleged cross-section requirements under that amendment and also assumes, without deciding, that such requirements are applicable in civil actions.[13]

To establish a prima facie violation of the right to cross-section, Plaintiff must show:

> (1) that the group alleged to be excluded is a 'distinctive' group in the community;
>
> (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and
>
> (3) that this underrepresentation is due to systematic exclusion of the group in the jury selection process.

<u>Duren v. Missouri</u>, 439 U.S. 357, 364, 99 S. Ct. 664, 668, 58 L. Ed. 2d 579, 587 (1979).

Plaintiff here alleges that African-Americans are "systematically excluded" from serving

---

defendant railroad by arguing that all persons who worked for a daily wage had been excluded from the jury list. The clerk of the court and jury commissioner admitted in their testimony in that case that this exclusion had been made "deliberately and intentionally." <u>Thiel</u>, 328 U.S. at 221, 66 S. Ct. 984. As noted by the court in <u>McCall</u>, "[w]ithout identifying any constitutional basis, the [Supreme] Court stated that: 'The American tradition of trial by jury, considered in connection with either criminal or civil proceedings contemplates an impartial jury drawn from a cross-section of the community.'" <u>McCall</u>, 617 F. Supp. at 246 n.4 (quoting <u>Thiel</u>, 328 U.S. at 220, 66 S. Ct. 984).

[13] It is noteworthy that Congress has legislatively mandated that federal juries in both civil and criminal cases be "selected at random from a fair cross section of the community in the district or division where the court convenes." The Jury Selection and Service Act of 1968, 28 U.S.C. §§ 1861-74, 1861 (2006). The Court addresses this statutory scheme and Plaintiff's cross-section statutory arguments below.

on juries in the Eastern Division. Plaintiff argues that the African-American population is far greater in the Greenville Division than it is in the other divisions within the Northern District; thus, according to Plaintiff, he should be allowed to try this case in Greenville. For several reasons, the Court finds that Plaintiff's arguments are not well taken and they fail to establish any constitutional violation(s).

The Court begins by turning its focus to the second and third elements of the <u>Duren</u> analysis, finding the first prong of <u>Duren</u> satisfied here. To prove his cross-section claim, Plaintiff presented U.S. census figures contrasting the population percentages of African-Americans between the Eastern Division and that of the Greenville Division. However, Plaintiff failed to introduce any evidence establishing that the representation of African-Americans on Eastern Division venires is not fairly and reasonably related to the number of such person in the community who are qualified to sit on a jury. <u>Duren</u> does not require that "juries actually chosen must mirror the community." <u>Taylor</u>, 419 U.S. at 538, 95 S. Ct. 692. "The fair-cross-section requirement does not guarantee jur[ies] of any particular composition. Rather, it only guarantees that the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups." <u>Paredes v. Quarterman</u>, 574 F.3d 281, 289 (5th Cir. 2009) (internal quotations and citations omitted).

Further, as to the third prong of <u>Duren</u>, the alleged underrepresentation of the distinct group in jury venires must have been the result of systematic exclusion in order to constitute a violation of the fair cross-section of the community requirement – that is, the group's alleged exclusion from a venire must have been due to some factor inherent in the

jury selection process.  It is the burden of the party challenging the jury selection process to make this showing, see United States v. Aponte-Suarez, 905 F.2d 483 (1st Cir. 1990), and that party must demonstrate not only that the distinctive group is not adequately represented *on the party's jury venire*, but also that this is the *general practice of other venires*.  See Timmel, 799 F.2d 1083. The Supreme Court cases that have addressed the cross-section issue have examined the selection process of a number of jury venires over a period of time.  See, e.g., Duren, 439 U.S. at 366, 99 S. Ct. 664 (reviewing the discrepancies both over a period of nearly a year and in the petitioner's specific case); Taylor, 419 U.S. at 524, 95 S. Ct. 692 (examining a time period of almost one year). In Duren, the Court found that the petitioner's "demonstration that a large discrepancy occurred not just occasionally but *in every weekly venire for a period of nearly a year* manifestly indicates that the cause of the underrepresentation was systematic. . . ." 439 U.S. at 366, 99 S. Ct. 664 (emphasis added).

Here, in stark contrast to Duren, Plaintiff presents only blanket statistics regarding the breakdown in population of Caucasians and African-Americans in the various divisions that comprise the Northern District.  Plaintiff, however, makes *no* showing of the selection process of a number of jury venires over a period of time.  In fact, because Plaintiff's motion appears premature, Plaintiff cannot even demonstrate that the jury to be selected in the future trial of this action will not adequately represent African-Americans.[14]  Further, many courts have held that if the essential principles of the Jury Selection and Service Act – i.e., random selection and objectivity – are satisfied, then a fair cross-section will result.

---

[14] Trial in this matter is currently set for January 2013.

33 FED. PROC., L. ED. § 77:158 (citing <u>United States v. Briggs</u>, 366 F. Supp. 1356 (N.D. Fla. 1973)); <u>see also</u> <u>United States v. Rosenthal</u>, 482 F. Supp. 867 (M.D. Ga. 1979) (finding that the fact the jury plan operates randomly and objectively is sufficient to withstand a statutory or constitutional challenge and noting that the court found no reported decisions in which a federal district court jury-selection plan adopted under the guidelines of the Act had been found to violate the Act or Constitution and that in every case where a system of jury selection has been declared unconstitutional, the presence of a subjective selection process offering at least the opportunity to discriminate was a major, if not determinative, factor). For the reasons discussed above, Plaintiff has failed to demonstrate a violation of the right to cross-section, assuming such a right exists in civil cases under the Seventh Amendment, in the jury selection procedures applicable to the Northern District.

*The Jury Selection and Service Act*

Plaintiff also appears to challenge the Northern District's divisional breakdown and jury selection procedures under the Jury Selection and Service Act. In 1968, Congress reformed the federal jury system and enacted the Jury Selection and Service Act (the "Act"). <u>See</u> Pub. L. No. 90-274, 82 Stat. 53 (1968) (codified as amended at 28 U.S.C. § 1861-1869 (2000)). The Act provides that, "[i]t is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861. Under the Act, Congress "established the machinery by which the state policy was to be implemented." <u>Taylor</u>, 419

U.S. at 529, 99 S. Ct. 664 (citing 28 U.S.C. §§ 1862-1866). The "test" (i.e., the analysis stemming from the Supreme Court's decision in <u>Duren</u>) for providing a prima-facie violation in the selection of a cross-section is essentially the same for challenges under both the Sixth Amendment and 28 U.S.C. § 1861. <u>See</u>, <u>e.g.</u>, <u>United States v. Cannady</u>, 54 F.3d 544, 546-47 (9th Cir. 1995). Thus, Plaintiff's legislative challenge under the Act fails for the same reasons as Plaintiff's constitutional challenge.

Yet, the Court nevertheless addresses an additional argument that often arises in the context of cross-section challenges under the Act. That argument concerns whether jury selection plans must be drawn from the entire district, rather than single divisions.[15] Here, Plaintiff presented evidence that there are more African-Americans in counties that, for jury selection purposes, fall within the Greenville Division, as opposed to the Eastern Division. This Court, joining several other circuit and district courts, finds that such an argument fails to establish a violation of the Act. The Act specifically contemplates that separate jury selection plans may be adopted for divisions within a district. <u>See</u> 28 U.S.C. § 1863(a). There is no constitutional or statutory right to a jury drawn from an entire district where there is a plan encompassing divisions. <u>See</u> <u>Cannady</u>, 54 F.3d at 547; <u>United States v. Florence</u>, 456 F.2d 46 (4th Cir. 1972); <u>see also</u> <u>Zicarelli v. Dietz</u>, 633 F.2d 312, 316-18 (3d Cir.1980), <em>cert. denied</em>, 449 U.S. 1083, 101 S. Ct. 868, 66 L. Ed.2 d 807 (1981) (there is no constitutional right to a jury selected from the whole district despite demographic differences between divisions); <u>United States v. Gottfried</u>, 165 F.2d 360, 364 (2d Cir.),

---

[15] It is unclear whether Plaintiff actually makes this argument in the motion for intra-district transfer. However, for purposes of this memorandum opinion, the Court assumes Plaintiff was attempting to make such an argument.

*cert. denied*, 333 U.S. 860, 68 S. Ct. 738, 92 L. Ed. 1139 (1948) ("There are probably no districts in the Union, which can be divided without disclosing in the sections different racial, religious, political, social or economic percentages. To demand that they shall not, would be a fantastic pedantry which would serve no purpose and would put an end to the statute"); Ruthenberg v. United States, 245 U.S. 480, 482, 38 S. Ct. 168, 169, 62 L. Ed. 414 (1918) ("the proposition [that the Sixth Amendment was violated where the jury was not drawn from the whole district] disregards the plain text of the Sixth Amendment . . . expressly authorizing the drawing of a jury from a part of the district . . . ."). Only in those cases where the use of a division instead of the entire district constitutes "gerrymandering," resulting in the systematic exclusion of a "distinctive group" from participation in *any* jury selection system, is there a potential violation. See, e.g., Cannady, 54 F.3d at 547; United States v. Test, 550 F.2d 577, 594 (10th Cir. 1976) ("the partitioning of a district into jury divisions is sanctioned by the statute [28 U.S.C. § 1863(a) and § 1869(c) ], and it is clearly not unconstitutional, absent evidence that some cognizable group has been systematically excluded by 'gerrymandering' the division lines").

Plaintiff has presented no evidence of gerrymandering in the Northern District. The division of districts by counties is a practice that has long been accepted. See, e.g., United States v. Guy, 924 F.2d 702, 705 (7th Cir. 1991) (divisions were made by counties); United States v. Newman, 549 F.2d 240, 242 n.2 (2d Cir. 1977) (same); see also 28 U.S.C. § 1869(e) ("in judicial districts where there are no statutory divisions," a division can include "such *counties*, parishes, or similar political subdivisions surrounding the places where the court is held") (emphasis added). Accordingly, Plaintiff has not demonstrated

that gerrymandering has occurred, and his claim under the Jury Selection and Service Act fails.

*The Equal Protection Clause*

The Supreme Court has also recognized that the Equal Protection Clause protects against discrimination exclusion or substantial underrepresentation of persons from petit or grand juries. See, e.g., Castaneda v. Partida, 430 U.S. 482, 493-94; 97 S. Ct. 1272, 51 L. Ed. 2d 498 (1977); Hernandez v. Texas, 347 U.S. 475, 477, 74 S. Ct. 667, 98 L. Ed. 866 (1954). The test for establishing an Equal Protection Clause violation is as follows:

> The first step is to establish that the group [that was substantially underrepresented] is one that is a recognizable, distinct class, singled out for different treatment under the laws, as written or as applied. Next, the degree of underrepresentation must be proved, by comparing the proportion of the group in the total population to the proportion called to serve as grand jurors, *over a significant period of time*. Finally, [ ] a selection procedure that is susceptible of abuse or is not racially neutral supports the *presumption of discrimination* raised by the statistical showing.

Castaneda, 430 U.S. at 494, 97 S. Ct. 1272 (citations omitted) (emphasis added). Plaintiff, as discussed *supra*, failed to present the Court with a comparison between the proportion of African-Americans in the total population to the proportion called to serve as jurors, much less a comparison "over a significant period of time." Moreover, Plaintiff failed to establish that the selection process is not racially neutral or that it is susceptible of abuse. Accordingly, Plaintiff's Equal Protection challenge also fails.

## **CONCLUSION**

For the reasons stated above, Plaintiff's motion to transfer [85] is DENIED.

So ordered on this, the __25th__ day of ___January_____, 2012.


**/s/   Sharion Aycock_____**
**UNITED STATES DISTRICT JUDGE**